******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

## UNIFOODS, S.A. DE C.V. *v.* JULIA MAGALLANES ET AL.
### (AC 46166)

Moll, Seeley and Bear, Js.

*Syllabus*

The plaintiff appealed from the trial court's grant of summary judgment for the defendants M and C, the owners of F Co. The plaintiff, which had obtained a federal court judgment against F Co. and its successor in interest, I Co., claimed that M and C had fraudulently concealed and transferred business assets and income in an effort to avoid the judgment. *Held*:

The trial court properly determined that M and C had satisfied their burden of proving that no genuine issue of material fact existed that the plaintiff's claims were time barred under the one year and four year limitation periods of the Connecticut Uniform Fraudulent Transfer Act (§ 52-552j (1) and (2)).

The plaintiff failed to establish the existence of a genuine issue of material fact as to when it discovered or reasonably could have discovered the allegedly fraudulent transfers within the limitation period of § 52-552j (1) or the tolling provision of the statute (§ 52-595) governing fraudulent concealment.

An unsworn declaration by the plaintiff's export director did not constitute competent evidence of any fraudulent transfer, as it was not based on personal knowledge, lacked a foundation for its claims and relied on speculation and conjecture.

Argued September 19—officially released December 31, 2024

*Procedural History*

Action for, inter alia, a declaratory judgment setting aside allegedly fraudulent conveyances by the defendants, and for other relief, brought to the Superior Court in the judicial district of Stamford-Norwalk, where the court, *Hon. Kenneth B. Povodator*, judge trial referee, granted in part the defendants' motion to strike; subsequently, the court, *Hon. Kenneth B. Povodator*, judge trial referee, granted the defendants' motion for summary judgment and rendered judgment thereon, from which the plaintiff appealed to this court; thereafter,

this court dismissed the appeal as to CIMA Sales Strategies, LLC; subsequently, the court, *Menon, J.*, granted the parties' motion for a stay. *Affirmed.*

*Thomas W. Mott*, for the appellant (plaintiff).

*Catherine R. Keenan*, for the appellees (named defendant et al.).

*Opinion*

MOLL, J. The plaintiff, Unifoods, S.A. de C.V., appeals from the summary judgment rendered by the trial court in favor of the defendants Julia Magallanes and Calvin Cordulack on counts two through five of the plaintiff's operative complaint asserting violations of the Connecticut Uniform Fraudulent Transfer Act (CUFTA), General Statutes § 52-552a et seq.[1] On appeal, the plaintiff claims that the court improperly concluded that (1) the defendants satisfied their initial burden of demonstrating that no genuine issues of material fact existed and that, as a matter of law, the plaintiff's fraudulent transfer claims were time barred pursuant to General Statutes § 52-552j,[2] and (2) after shifting the burden of proof

---

[1] CIMA Sales Strategies, LLC, is also a defendant in the present action. On May 5, 2023, this court ordered, sua sponte, the parties to file supplemental memoranda addressing whether this appeal should be dismissed in part for lack of a final judgment only as to CIMA Sales Strategies, LLC, because there were counts of the plaintiff's operative complaint—counts one and six—that remained pending against it. See Practice Book § 61-3; *Phillips* v. *Hebron*, 201 Conn. App. 810, 817–18, 244 A.3d 964 (2020). In their respective supplemental memoranda filed in compliance with this court's briefing order, the parties agreed that no final judgment exists as to CIMA Sales Strategies, LLC. On June 7, 2023, this court dismissed the appeal in part for lack of a final judgment only as to CIMA Sales Strategies, LLC. On May 8, 2024, the trial court, *Menon, J.*, granted a joint motion filed by the parties seeking to stay the trial court proceedings pending this court's resolution of this appeal, with the current stay in effect through January 20, 2025.

In the interest of simplicity, we refer to Magallanes and Cordulack collectively as the defendants.

[2] General Statutes § 52-552j provides: "A cause of action with respect to a fraudulent transfer or obligation under sections 52-552a to 52-552*l*, inclusive, is extinguished unless action is brought: (1) Under subdivision (1) of subsection (a) of section 52-552e, within four years after the transfer was

to the plaintiff, the plaintiff had not established the existence of genuine issues of material fact regarding the timeliness of its claims. We disagree and, accordingly, affirm the judgment of the trial court.

The following facts, which are undisputed, and procedural history are relevant to our resolution of this appeal. In July, 2008, the defendants formed Incredible Foods Group, LLC (IFG). On October 23, 2013, IFG commenced arbitration proceedings against the plaintiff alleging that the plaintiff had breached a sublicense agreement executed by IFG and the plaintiff in November, 2011. The plaintiff then filed a counterclaim alleging, inter alia, that IFG failed to repay loans that the plaintiff had made to it. On July 24, 2014, the arbitrator issued a final award rejecting IFG's claims and awarding the plaintiff a total of $568,104.30, which included damages, attorney's fees and interest, and administrative fees and expenses. On August 11, 2014, Magallanes formed iSell Unlimited, LLC (iSell).[3]

On September 5, 2014, IFG filed with the United States District Court for the Eastern District of New York (District Court) a petition to vacate in part the

made or the obligation was incurred or, if later, within one year after the transfer or obligation was or could reasonably have been discovered by the claimant; (2) under subdivision (2) of subsection (a) of section 52-552e or subsection (a) of section 52-552f, within four years after the transfer was made or the obligation was incurred; or (3) under subsection (b) of section 52-552f, within one year after the transfer was made or the obligation was incurred."

[3] The defendants averred in respective personal affidavits, which are part of the record, that Cordulack was not a member of, and had no interest in, iSell. In an unsworn declaration of a representative of the plaintiff, which is also part of the record, the plaintiff's representative stated that iSell was "formed by Magallanes *and/or* Cordulack . . . ." (Emphasis added.) As the trial court, *Hon. Kenneth B. Povodator*, judge trial referee, noted in its decision granting the defendants' motion for summary judgment, when coupled with the defendants' averments, "the 'or' aspect of the plaintiff's submission is validated (undisputed), and the 'and' version appears to lack any supporting evidence."

arbitration award. The plaintiff opposed IFG's petition and sought to confirm the arbitration award. On July 6, 2015, the plaintiff filed a motion for joinder of iSell as a successor in interest to IFG, which motion was granted by a federal magistrate judge and affirmed by the District Court. By way of decisions filed on September 29 and October 2, 2015, the District Court denied IFG's petition to vacate the arbitration award and confirmed the award against IFG and iSell. The aggregate amount of the District Court's judgment, including attorney's fees that were subsequently awarded, was $579,244.30. No appeals were taken from these decisions.

On October 26, 2015, iSell filed a voluntary chapter 7 bankruptcy petition (bankruptcy petition) in the United States Bankruptcy Court for the District of Connecticut (Bankruptcy Court). The bankruptcy petition disclosed (1) a bank account at Stamford Bank & Trust valued at $50 as iSell's only asset and (2) $573,550 in unsecured nonpriority claims, including judgment debt owed to the plaintiff in the amount of $568,100,[4] as iSell's only liabilities. On October 29, 2015, a certificate of notice (notice) was issued by the Bankruptcy Noticing Center, providing information about the bankruptcy petition and a scheduled meeting of creditors, which notice the plaintiff acknowledges that it received.[5]

On October 30, 2015, Magallanes formed CIMA Sales Strategies, LLC (CIMA). Magallanes is a manager and

[4] In granting the defendants' motion for summary judgment, the trial court, *Hon. Kenneth B. Povodator*, judge trial referee, stated that the discrepancy between the $568,100 judgment debt listed in the bankruptcy petition and the $579,244.30 awarded to the plaintiff by the District Court was "primarily, if not solely, attributable to the noninclusion of attorney's fees [in the bankruptcy petition] that were awarded to the plaintiff."

[5] The meeting of creditors was held on January 6, 2016. In her affidavit submitted in support of the defendants' motion for summary judgment, Magallanes averred that the plaintiff did not attend this meeting. The plaintiff did not present evidence rebutting this averment.

member of, and the agent for service of process for, CIMA, and, at all relevant times, directly or indirectly, Magallanes has wholly or partially controlled CIMA's business activities.[6]

On January 31, 2016, the bankruptcy trustee filed a report of no distribution, reporting that there was no property available for distribution to creditors of iSell's bankruptcy estate over and above that exempted by law and certifying that the estate had been fully administered. The report of no distribution further reflected that $50 in assets were abandoned and that $573,550 in claims were scheduled to be discharged. The bankruptcy case was closed on April 4, 2016.[7]

The plaintiff commenced the present action against Cordulack on June 13, 2020, and subsequently cited in

[6] On the basis of their evidentiary submissions filed in connection with the defendants' motion for summary judgment, the parties do not dispute that Magallanes formed CIMA on October 30, 2015. In its operative complaint, the plaintiff alleged that (1) CIMA was registered with the Secretary of the State on October 30, 2015, (2) "Magallanes is the agent for service of process and a 'manager' of . . . CIMA, and upon information and belief is a member, beneficial owner, and/or partner of CIMA," and, (3) "[a]t all relevant times, Magallanes, directly or indirectly, has controlled in whole or in part the business activities of CIMA." In her answer, Magallanes admitted that (1) CIMA was formed on October 30, 2015, (2) "Magallanes is the principal, a manager, a member, and the agent for service of process for . . . CIMA," and, (3) as the plaintiff alleged, "[a]t all relevant times, Magallanes, directly or indirectly, has controlled in whole or in part the business activities of CIMA." In his answer, Cordulack denied knowledge of these facts alleged in the operative complaint.

[7] Neither IFG nor iSell is a party to the present action. It is undisputed that IFG was dissolved in December, 2014. As for iSell, the Secretary of the State's records, of which we may take judicial notice; see *Kloiber* v. *Jellen*, 207 Conn. App. 616, 626–27, 263 A.3d 952 (2021); reflect that Magallanes filed articles of dissolution on April 11, 2017, providing that iSell's effective date of dissolution was April 4, 2016. In her affidavit submitted in support of the defendants' motion for summary judgment, Magallanes averred that iSell no longer exists without specifying the date on which iSell was dissolved. In an unsworn declaration of a representative of the plaintiff, which is also part of the record, the plaintiff's representative stated that, on the basis of the Secretary of the State's records, iSell was dissolved on April 11, 2017.

Magallanes and CIMA on August 23, 2020.[8] The plaintiff's complaint dated August 18, 2020 (operative complaint), contained six counts, of which counts two through five are relevant to this appeal.[9] In count two, the plaintiff asserted a claim of fraudulent transfer in violation of General Statutes § 52-552e (a) (1)[10] of

[8] According to the state marshal's return of service filed with the trial court on June 19, 2020, the defendants and CIMA were served with the plaintiff's original complaint, dated June 1, 2020, by abode service on June 13, 2020. On June 29, 2020, Magallanes and CIMA filed a motion to dismiss the original complaint against them for lack of personal jurisdiction on the basis of insufficient service of process. On July 14, 2020, anticipating that the motion to dismiss would be granted, the plaintiff filed a motion to cite in Magallanes and CIMA as party defendants in the present action, which the trial court, *Hon. Kevin Tierney*, judge trial referee, granted on July 28, 2020. As reflected in the state marshal's subsequent return of service filed with the court on August 26, 2020, service of the plaintiff's operative complaint, dated August 18, 2020, was effectuated on Magallanes and CIMA by abode service on August 23, 2020.

[9] In count one of the operative complaint, the plaintiff alleged that CIMA was holding assets and/or property subject to a constructive trust for the benefit of the plaintiff and that CIMA would be unjustly enriched were it permitted to retain those assets and/or property. In count six, the plaintiff sought to domesticate the District Court's judgment, alleging that the defendants and CIMA were liable for the satisfaction of that judgment. On August 31, 2020, the defendants and CIMA moved to strike counts one and six, along with portions of the prayer for relief. On August 12, 2021, the trial court, *Hon. Kenneth B. Povodator*, judge trial referee, granted in part the motion to strike, striking the portion of count six directed to the defendants, as well as portions of the relief requested by the plaintiff. That ruling is not at issue in this appeal.

We note that no judgment has been rendered on the stricken sixth count as to the defendants. "It is well established that [t]he granting of a motion to strike . . . ordinarily is not a final judgment . . . ." (Internal quotation marks omitted.) *Dressler* v. *Riccio*, 205 Conn. App. 533, 537 n.2, 259 A.3d 14 (2021). Nevertheless, because the summary judgment rendered in the defendants' favor disposed of the remaining counts of the operative complaint against them, a final judgment exists as to the defendants. See id. (appeal was taken from final judgment, notwithstanding that motion for judgment on stricken count had not been adjudicated, because remaining counts were disposed of by way of summary judgment).

[10] General Statutes § 52-552e (a) provides: "A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, if the creditor's claim arose before the transfer was made or the obligation was incurred and if the debtor made the transfer or incurred the obligation: (1) With actual

CUFTA against Magallanes and CIMA. In count three, the plaintiff asserted a claim of fraudulent transfer in violation of § 52-552e (a) (2) and/or General Statutes § 52-552f[11] of CUFTA against Magallanes and CIMA. In support of counts two and three, the plaintiff alleged in relevant part that "some or all of the business, property, customers, assets, powers, privileges, and/or obligations of iSell . . . now . . . belong to CIMA pursuant to a fraudulent transfer from iSell, through . . . Magallanes, to CIMA for no consideration or nominal consideration contemporaneous with iSell's bankruptcy filing. . . . Magallanes has intentionally and purposely attempted to hide and conceal . . . a . . . fraudulent conveyance of business assets and income in an effort to avoid the plaintiff's judgment against IFG and iSell. . . . By virtue of the fraud, actual or constructive, of iSell and . . . Magallanes . . . CIMA is a successor in interest to IFG and iSell and improperly holds assets and/or property contrary to equity and good conscience." To further support count two, the plaintiff alleged, inter alia, that Magallanes and iSell transferred assets to CIMA with the actual intent to hinder, delay,

---

intent to hinder, delay or defraud any creditor of the debtor; or (2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor (A) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction, or (B) intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due."

[11] General Statutes § 52-552f provides: "(a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

"(b) A transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time and the insider had reasonable cause to believe that the debtor was insolvent."

or defraud the plaintiff. To further support count three, the plaintiff alleged, inter alia, that Magallanes transferred iSell's assets to CIMA without receiving a reasonably equivalent value in return, leaving iSell unable to meet its obligations to the plaintiff.

In count four of the operative complaint, the plaintiff alleged that Magallanes violated § 52-552e (a) (1) of CUFTA, inter alia, by knowingly transferring assets belonging to IFG and/or iSell to herself and/or to others with the actual intent to hinder, delay, or defraud the plaintiff. In count five, the plaintiff alleged that Cordulack violated § 52-552e (a) (1) of CUFTA, inter alia, by knowingly (1) transferring assets belonging to IFG and/or iSell to himself and/or to others with the actual intent to hinder, delay, or defraud the plaintiff, and/or (2) conspiring with and/or allowing Magallanes to transfer assets belonging to IFG and/or its successors to herself and/or to others with the actual intent to hinder, delay, or defraud the plaintiff.

On February 9, 2022, the defendants each filed an answer denying the material allegations of the plaintiff's respective claims against them. Additionally, the defendants each asserted special defenses alleging that the plaintiff's claims were time barred pursuant to the limitations provisions of § 52-552j. Magallanes contended that (1) counts two and four of the operative complaint were time barred under subsection (1) of § 52-552j and (2) count three was time barred under subsection (2) of § 52-552j. Cordulack claimed that count five was time barred pursuant to § 52-552j (1). The plaintiff did not file replies to the defendants' special defenses.

On June 16, 2022, the defendants filed a motion for summary judgment, accompanied by a supporting memorandum of law, as to counts two through five of the operative complaint on the ground that the plaintiff's fraudulent transfer claims were brought outside of the

applicable limitations period of § 52-552j.[12] To support the motion, the defendants submitted personal affidavits along with several appended exhibits, including a copy of the bankruptcy petition. As to count two, the defendants asserted that (1) the plaintiff expressly alleged that the purported fraudulent transfers were "contemporaneous" with iSell's October 26, 2015 bankruptcy filing, such that the four year limitations period of § 52-552j (1) expired on October 26, 2019,[13] or, alternatively, (2) if the term "contemporaneous" were broadly construed, the limitations period terminated on April 4, 2020, four years after the close of iSell's bankruptcy case. Insofar as the separate one year limitations period of § 52-552j (1) applied, the defendants contended that (1) the plaintiff received notice of the bankruptcy petition by way of the notice issued on October 29, 2015, such that it discovered or reasonably could have discovered any purported fraudulent transfers at that time, or (2) in the alternative, if the notice were not received by the plaintiff, then the plaintiff unequivocally was aware of the bankruptcy proceedings by no later than April 18, 2019, when the plaintiff acknowledged iSell's bankruptcy while deposing Cordulack as part of postjudgment proceedings in the District Court, such that April 18, 2020, was the "most outside possible date" on which the limitations period expired. With respect to count three, incorporating their

---

[12] As an additional special defense directed to count four of the operative complaint, Magallanes alleged that, insofar as count four raised a common-law fraudulent transfer claim, it was time barred by the three year limitations period of General Statutes § 52-577. Cordulack asserted a substantively similar special defense directed to count five. The applicability of § 52-577 was not addressed by the parties or by the court in connection with the defendants' motion for summary judgment, and the parties do not rely on § 52-577 on appeal. Thus, we need not address § 52-577 further.

[13] The defendants stated that the plaintiff "had until October 29, 2019, to bring a timely claim for fraudulent transfer under . . . § 52-552e (a) (1)." We construe the defendants' reference to October 29, 2019, rather than to October 26, 2019, to be a scrivener's error.

reasoning as to count two, the defendants maintained that the plaintiff's claim was extinguished pursuant to § 52-552j (2) either on October 26, 2019, or April 4, 2020.

As to counts four and five of the operative complaint, the defendants contended that the plaintiff expressly alleged that the purported transfers occurred "prior to the [October 26, 2015] iSell bankruptcy filing," such that the four year limitations period of § 52-552j (1) expired no later than October 26, 2019. Insofar as the separate one year limitations period of § 52-552j (1) applied, the defendants maintained that it was "indisputable" that the plaintiff knew of iSell's bankruptcy proceedings on or before April 18, 2019, when the plaintiff referenced the bankruptcy proceedings during Cordulack's deposition, such that the plaintiff's claims could have been brought no later than April 18, 2020. All of the dates identified by the defendants as possible terminal dates for the applicable limitations period preceded the plaintiff's commencement of the present action against them.

On July 29, 2022, the plaintiff filed a memorandum of law in opposition to the defendants' motion for summary judgment. To support its memorandum of law, the plaintiff submitted an unsworn declaration of Javier Perezgrovas Robles Gil (Perezgrovas),[14] the plaintiff's

---

[14] The unsworn declaration, which Perezgrovas executed in Mexico, was submitted in accordance with the Uniform Unsworn Foreign Declarations Act, General Statutes § 1-65aa et seq. See General Statutes § 1-65bb (6) (" 'Sworn declaration' means a declaration in a signed record given under oath. 'Sworn declaration' includes a sworn statement, verification, certificate or affidavit."); General Statutes § 1-65bb (7) (" '[u]nsworn declaration' means a declaration in a signed record that is not given under oath, but is given under penalty of perjury"); General Statutes § 1-65cc ("[s]ections 1-65aa to 1-65hh, inclusive, apply to an unsworn declaration by a declarant who at the time of making the declaration is physically located outside the boundaries of the United States whether or not the location is subject to the jurisdiction of the United States"); General Statutes § 1-65dd ("[i]f a law of this state requires or permits use of a sworn declaration, an unsworn declaration meeting the requirements of sections 1-65aa to 1-65hh, inclusive, has the same effect as a sworn declaration").

export director, appended to which were excerpts from Magallanes' responses to interrogatories and to requests for production, dated May 27, 2021, propounded in the present action. The plaintiff refuted the defendants' contention that the relevant limitations period vis-à-vis its fraudulent transfer claims started to run on October 26, 2015, the date of iSell's bankruptcy filing, because the defendants' evidentiary submissions failed to demonstrate a lack of any genuine issues of material fact as to when (1) the alleged fraudulent transfers took place and (2) the plaintiff discovered or reasonably could have discovered said transfers. Moreover, the plaintiff asserted that it first discovered an alleged fraudulent transfer in 2020, when, through a private investigator hired by its attorneys, it learned that Magallanes had formed CIMA.

The plaintiff further contended that iSell fraudulently disclosed in the bankruptcy petition only one asset, a Stamford Bank & Trust bank account valued at $50, which was not an accurate and complete representation of iSell's financial affairs. According to the plaintiff, iSell improperly failed to disclose several additional assets in the bankruptcy petition, namely, (1) a bank account at Citibank (Citibank account), the records of which the plaintiff had subpoenaed in 2019, (2) used furniture, which, according to Magallanes' interrogatory responses, CIMA "took over" after the furniture had been abandoned by IFG, iSell, and the bankruptcy trustee, and (3) a services agreement with an entity known as Empacadora San Marcos USA, Ltd. (services agreement), which (a) IFG had assigned to iSell in August, 2014, and that, according to Perezgrovas' unsworn declaration, iSell later had transferred to CIMA at or around the time of the filing of the bankruptcy petition, and (b) the plaintiff discovered in 2022. The plaintiff additionally argued that Magallanes failed to

disclose her formation of CIMA to the bankruptcy trustee.

The plaintiff maintained that, as a result of the defendants' alleged acts of fraudulently concealing and transferring assets, (1) the bankruptcy trustee did not discover any additional assets prior to filing the report of no distribution on January 31, 2016, and (2) it was "impossible" for the plaintiff to have discovered the purported fraudulent transfers on the basis of the bankruptcy petition. The plaintiff further argued that there were genuine issues of material fact as to whether the defendants "intentionally concealed the plaintiff's causes of action to further avoid the [District Court's] judgment," thereby invoking the tolling provisions of General Statutes § 52-595.[15]

On September 6, 2022, the defendants filed a reply memorandum, appended to which were the plaintiff's responses to interrogatories and requests for production, dated December 8, 2020, propounded in the present action. In response to the plaintiff's argument that they failed to demonstrate that there were no genuine issues of material fact concerning, inter alia, the dates of any alleged fraudulent transfers, the defendants contended that (1) they "[could not] prove a negative, nor [was] it their obligation to do so," (2) they were relying on the allegations of the operative complaint to assert their statute of limitations defenses, and (3) the plaintiff's failure to present any evidence of a transfer, let alone a fraudulent transfer, could not operate to create genuine issues of material fact. The defendants maintained that they denied the existence of any fraudulent transfers and presented evidence that, other than $50

_____

[15] General Statutes § 52-595 provides: "If any person, liable to an action by another, fraudulently conceals from him the existence of the cause of such action, such cause of action shall be deemed to accrue against such person so liable therefor at the time when the person entitled to sue thereon first discovers its existence."

in a bank account, iSell had no assets at the time of its bankruptcy filing, such that "any purported fraudulent transfer . . . would have occurred before the bankruptcy . . . ." In addition, the defendants iterated that the plaintiff had received notice of the bankruptcy proceedings in 2015, such that, insofar as the one year limitations period of § 52-552j (1) applied, the plaintiff's claims were extinguished in 2016.

The defendants further asserted that the plaintiff failed to meet its burden to submit any competent evidence establishing genuine issues of material fact undermining their statute of limitations defenses. With regard to iSell's bankruptcy proceedings, the defendants argued that the plaintiff had "no basis, other than supposition, to claim that iSell or Magallanes engaged in fraud" because (1) neither the bankruptcy trustee nor the Bankruptcy Court made any findings of any wrongdoing during the bankruptcy proceedings, (2) the plaintiff did not seek to reopen the bankruptcy case to assert fraud, (3) the January 31, 2016 report of no distribution reflected that the bankruptcy trustee, after " '[making] a diligent inquiry into the financial affairs of [iSell] and the location of the property belonging to the [bankruptcy] estate,' " found no assets other than $50 in a bank account, and (4) the plaintiff presented no evidence as to what documentation the bankruptcy trustee had requested or received.

With regard to the plaintiff's fraudulent concealment argument predicated on § 52-595, the defendants contended that the plaintiff had offered no evidence of any transfer, let alone a fraudulent transfer, that the defendants allegedly concealed. As to the Citibank account, the defendants asserted that, although the record reflected that the plaintiff had subpoenaed Citibank records in 2019, the plaintiff failed to submit evidence that iSell actually owned a Citibank account that was open and funded at the time of the bankruptcy

proceedings. With regard to the services agreement, the defendants argued that the plaintiff failed to provide any evidence of the value of the agreement, that it was transferred fraudulently, or whether the bankruptcy trustee was aware of it.[16] Additionally, the defendants argued that the trial court should disregard Perezgrovas' unsworn declaration because, inter alia, it was not made upon personal knowledge.

On December 1, 2022, the court, *Hon. Kenneth B. Povodator*, judge trial referee, ordered, sua sponte, the parties to file supplemental memoranda addressing the effect, if any, of Governor Ned Lamont's Executive Order No. 7G (executive order)[17] on the court's analysis. The court stated that the defendants had identified dates in April, 2020, as potential terminal dates for the expiration of the applicable limitations period and that the executive order presumptively suspended any limitations period that would have run on those dates. The court further stated that, "[i]f a modified argument as to alternate dates (dates unaffected by the executive order) is required based on the acknowledged inapplicability of the April [2020] dates, that also may be submitted."

On December 14, 2022, the parties filed supplemental memoranda in compliance with the court's briefing

---

[16] In their September 6, 2022 reply memorandum, the defendants did not expressly address the used furniture identified by the plaintiff in its memorandum of law in opposition to their motion for summary judgment.

[17] Executive Order No. 7G, § 2 (March 19, 2020), issued during the COVID-19 pandemic, provides in relevant part: "Notwithstanding any provision of the Connecticut General Statutes or of any regulation, local rule or other provision of law, I hereby suspend, for the duration of this public health and civil preparedness emergency, unless earlier modified or terminated by me, all statutory (1) location or venue requirements; (2) time requirements, statutes of limitations or other limitations or deadlines relating to service of process, court proceedings or court filings; and (3) all time requirements or deadlines related to the Supreme, Appellate and Superior courts or their judicial officials to issue notices, hold court, hear matters and/or render decisions . . . ." This provision expired on March 1, 2021. See Executive Order No. 10A, § 5 (February 8, 2021).

order. The plaintiff argued that, pursuant to the executive order, any limitations period scheduled to expire in April, 2020, was suspended on March 19, 2020, and remained suspended when it commenced the present action against the defendants. In contrast, the defendants argued that the executive order was immaterial to the court's analysis because there were no genuine issues of material fact that the plaintiff's fraudulent transfer claims were extinguished prior to the issuance of the executive order. As to counts two, four, and five of the operative complaint, the defendants maintained that, pursuant to § 52-552j (1), the statute of limitations expired on one of the following dates: (1) October 29, 2016, one year after the notice had been mailed to the plaintiff; (2) October 26, 2019, four years after iSell's bankruptcy filing; or (3) January 31, 2020, four years after the filing of the bankruptcy trustee's report of no distribution. As to count three, the defendants asserted that, pursuant to § 52-552j (2), the statute of limitations expired on October 26, 2019, four years after iSell's bankruptcy filing.

In addition, the defendants acknowledged that, in initially moving for summary judgment, they identified "alternative" dates in April, 2020, on which the limitations period governing the plaintiff's fraudulent transfer claims expired. They explained, however, that, "[a]fter the plaintiff submitted its objection [to the defendants' motion for summary judgment] and [Perezgrovas'] unsworn declaration . . . it became readily apparent that the alternative arguments made by the defendants were unnecessary and that the court did not need to reach the alternative arguments because there [were] no genuine issue[s] of material fact that [1] any alleged 'fraudulent' transfer from iSell to any third party occurred on or before October 26, 2015," and (2) the plaintiff knew or reasonably could have known about

any such transfer on October 29, 2015, or on January 31, 2016.

On December 20, 2022, the court granted the defendants' motion for summary judgment on counts two through five of the operative complaint.[18] Preliminarily, the court observed that, with regard to fraudulent transfer claims, "the date or dates of transfers generally are known or knowable, and any claim of concealment usually has an identified date of learning of the claimed concealed fraudulent transfer. [The present action] has a highly unusual—potentially approaching unique—quality in that there is no identified date (with competent evidence) of transfer/conveyance of any competently identified material property that is being challenged by the plaintiff as a claimed fraudulent transfer. Indeed, it goes even further than a lack of specificity as to when a transfer occurred; there is a lack of competent evidence as to what was transferred or conveyed that might give rise to a fraudulent transfer/conveyance claim. In that context, it is not surprising that a specific date cannot be identified, since a transfer of specified property on a given date presupposes an ability to identify the property transferred (as well as the fact of a transfer having occurred); it is something of an oxymoron to speak of a specified date of transfer of property if the property itself cannot be identified." As the court recognized, the defendants denied the existence of any transfer giving rise to the plaintiff's fraudulent transfer claims, and, in asserting their statute of limitations defenses, they relied on the plaintiff's allegations that

---

[18] The court also rendered summary judgment in favor of CIMA, which had joined the defendants' motion for summary judgment. We limit our discussion to the defendants because this appeal has been dismissed as to CIMA. See footnote 1 of this opinion.

Additionally, the court stated that it heard argument on the motion for summary judgment on September 12, 2022. No transcript has been filed in this appeal, and, pursuant to Practice Book § 63-4 (a) (3), the plaintiff certified that no transcript was deemed necessary for this appeal.

the purported fraudulent transfers occurred at about the time of iSell's bankruptcy filing and/or the District Court's judgment. The court proceeded to conclude that the defendants had "established, at least on a prima facie basis, the absence of any transfer within a potentially relevant (and timely) time period other than as claimed by the plaintiff—the plaintiff's own allegations relating to transfers are in terms of events more than four years prior to the commencement of [the present action]."

Having concluded that the defendants satisfied their prima facie burden, the court stated that "the burden shift[ed] to the plaintiff to establish a material issue of fact, either as to a fraudulent transfer within the statutory limitations period or an act of concealment relating to an actionable fraudulent concealment within the statutory period." The court then determined that the plaintiff had failed to offer competent evidence of a fraudulent transfer of "material proportion" within any applicable limitations period.[19]

The court rejected the plaintiff's reliance on the several assets it identified as having been fraudulently transferred in arguing that genuine issues of material fact existed as to the defendants' statute of limitations defenses. As to the Citibank account, the court stated that, although the record reflected that the plaintiff had subpoenaed Citibank in 2019 for bank records regarding iSell, the plaintiff failed to identify any funds found in any such account or a transfer of funds from any such account. Moreover, the court determined that the concealment of any "trivial" transaction from the Citibank account would not constitute a "concealment of facts for the purpose of obtaining delay on the [plaintiff's]

---

[19] The court noted that the plaintiff had approximately two years since the commencement of the present action against the defendants to conduct discovery and had not requested additional time to conduct discovery pursuant to our rules of practice.

part in filing a complaint on [its] cause of action." (Internal quotation marks omitted.)

Turning to the used furniture in the possession of CIMA that IFG and iSell previously had owned, the court determined that (1) Magallanes' interrogatory responses contained the only evidence in the record of the furniture's value, which was less than $200, (2) the bankruptcy trustee "apparently deemed that furniture to be not worth the effort of treatment as an asset for purposes of winding up [iSell's] bankruptcy estate," and (3) the furniture "fail[ed] to be of concern to the court because there [was] no plausibility to any claim that the transfer of the furniture may have been part of an attempt to deprive the plaintiff of property that it could have obtained in partial satisfaction of its judgment, and, even if that supposition were to be deemed unreasonable, the court has little doubt that it fail[ed] to represent a material issue of fact." (Emphasis omitted.) Like the Citibank account, the court deemed any transaction of the used furniture to be "trivial," such that the concealment of any such transfer was not a "concealment of facts for the purpose of obtaining delay on the [plaintiff's] part in filing a complaint on [its] cause of action." (Internal quotation marks omitted.)

With respect to the services agreement, the court first determined that, although the record reflected that IFG had transferred the agreement to iSell in 2014, there was no competent evidence establishing that iSell later transferred the agreement to CIMA.[20] The court acknowledged that Perezgrovas stated in his unsworn declaration that, "[u]pon information and belief, at some point in time the services agreement . . . was ultimately transferred to CIMA, which the plaintiff only learned about in May of 2022 when the defendants voluntarily disclosed that fact in the course of this litigation." The court rejected these statements because they

---

[20] A copy of the services agreement was not made part of the record.

were not predicated on Perezgrovas' personal knowledge and there was no indication of the source of the information upon which Perezgrovas relied. Setting aside its determination that Perezgrovas' statements did not constitute competent evidence, the court determined that the plaintiff failed to present evidence concerning (1) the value of the services agreement, (2) whether the services agreement was subject to execution by the plaintiff, and (3) whether the services agreement was transferable without consent. As the court explained, "[i]f the [services] agreement were not an asset of material value that could be obtained by way of postjudgment execution, [then] the transfer [thereof] could not be material, and the failure to disclose (or the affirmative act of concealment) could not be material to a statute of limitations tolling argument."[21]

In addition, the court discounted the plaintiff's argument that, during iSell's bankruptcy proceedings, Magallanes improperly had failed to disclose her formation of CIMA. The court determined that there was no "obvious nexus" between this argument and the plaintiff's fraudulent transfer claims because (1) there was no "apparent 'transfer' " of an asset in connection with CIMA's formation and, in any event, (2) any such transfer necessarily would have occurred when CIMA was formed in 2015, and there was no evidence that the formation of CIMA and CIMA's business operations had been concealed.

In summary, the court concluded that "[t]he plaintiff ha[d] not established the existence of a potentially fraudulent transfer (of material proportion) by competent evidence, and ha[d] not identified the date of such

---

[21] With respect to iSell's Stamford Bank & Trust bank account, the court stated that (1) the account was disclosed in the bankruptcy petition and, thus, not concealed, and (2) assuming arguendo that the account was concealed and transferred, it was a "trivial" asset such that its transfer did not constitute a "concealment of facts for the purpose of obtaining delay on the [plaintiff's] part in filing a complaint on [its] cause of action." (Internal quotation marks omitted.)

a transfer as coming within a permissible period of time for purposes of a statute of limitations analysis (again by competent evidence)—with the latter essentially a natural consequence of the former."[22] This appeal followed. Additional facts and procedural history will be set forth as necessary.

Before turning to the plaintiff's claims, we set forth the following applicable standard of review and legal principles. "In seeking summary judgment, it is the movant who has the burden of showing the nonexistence of any issue of fact. The courts are in entire agreement that the moving party for summary judgment has the burden of showing the absence of any genuine issue as to all the material facts, which, under applicable principles of substantive law, entitle [the movant] to a judgment as a matter of law. The courts hold the movant to a strict standard. To satisfy [its] burden the movant must make a showing that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact. . . . As the burden of proof is on the movant, the evidence must be viewed in the light most favorable to the opponent. . . . When documents submitted in support of a motion for summary judgment fail to establish that there is no genuine issue of material fact, the nonmoving party has no obligation to submit documents establishing the existence of such an issue. . . . Once the moving party has met its burden, however, the opposing

---

[22] In opposing the defendants' motion for summary judgment, the plaintiff further argued that (1) the motion was filed one day late in violation of the court's operative scheduling order and (2) Cordulack's deposition testimony adduced in connection with the District Court proceedings, a transcript of which was appended to his affidavit, constituted inadmissible hearsay. In response, the defendants contended that (1) the motion for summary judgment was filed in the late evening on June 15, 2022, which belated filing caused no prejudice to the plaintiff, and (2) Cordulack's deposition testimony was admissible. The court did not address these arguments in its decision granting the motion for summary judgment, and the plaintiff on appeal has not raised any claims of error predicated on these issues. Thus, these issues are not before us for consideration.

party must present evidence that demonstrates the existence of some disputed factual issue. . . . It is not enough, however, for the opposing party merely to assert the existence of such a disputed issue. Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court under Practice Book § [17-45]. . . . Our review of the trial court's decision to grant [or to deny a] motion for summary judgment is plenary. . . .

"[I]n the context of a motion for summary judgment based on a statute of limitations special defense, [the movant] typically [meets its] initial burden of showing the absence of a genuine issue of material fact by demonstrating that the action had commenced outside of the statutory limitation period. . . . When the [nonmovant] asserts that the limitations period has been tolled by an equitable exception to the statute of limitations, the burden normally shifts to the [nonmovant] to establish a disputed issue of material fact in avoidance of the statute. . . . Put differently, it is then incumbent upon the party opposing summary judgment to establish a factual predicate from which it can be determined, as a matter of law, that a genuine issue of material fact exists." (Citation omitted; internal quotation marks omitted.) *Kuselias* v. *Zingaro & Cretella, LLC*, 224 Conn. App. 192, 207–208, 312 A.3d 118, cert. denied, 349 Conn. 916, 316 A.3d 357 (2024).

Section 52-552j, which applies to the plaintiff's fraudulent transfer claims, contains three limitations provisions, the first two of which are relevant to this appeal. The first limitations provision governs claims of fraudulent transfer in violation of § 52-552e (a) (1) of CUFTA, as asserted in counts two, four, and five of the operative complaint, and requires such claims to be brought "within four years after the transfer was made . . . or, if later, within one year after the transfer . . . was or

could reasonably have been discovered by the claimant
. . . .” General Statutes § 52-552j (1). The second limita-
tions provision applies to claims of fraudulent transfer
in violation of § 52-552e (a) (2) or § 52-552f (a) of
CUFTA, as asserted in count three, and requires such
claims to be brought “within four years after the transfer
was made . . . .”[23] General Statutes § 52-552j (2).

Additionally, § 52-595, on which the plaintiff relies,
codifies the tolling doctrine of fraudulent concealment.
See *Reyes* v. *State*, 222 Conn. App. 538, 550, 306 A.3d
515 (2023). “With respect to fraudulent concealment
under § 52-595, [t]he question . . . is whether the
[plaintiff] [has] adduced any credible evidence that [the
defendants] fraudulently concealed the existence of the
[plaintiff’s] cause of action. . . . Under our case law,
to prove fraudulent concealment, the [plaintiff] [was]
required to show: (1) [the defendants’] actual aware-
ness, rather than imputed knowledge, of the facts neces-
sary to establish the [plaintiff’s] cause of action; (2)
[the defendants’] intentional concealment of these facts
from the [plaintiff]; and (3) [the defendants’] conceal-
ment of the facts for the purpose of obtaining delay on
the [plaintiff’s] part in filing a complaint on [its] cause of
action.” (Internal quotation marks omitted.) Id., 550–51.
“Our Supreme Court further has explained that, [t]o

---

[23] The third limitations provision of § 52-552j governs claims of fraudulent
transfer in violation of § 52-552f (b) of CUFTA, which concerns a transfer
to an insider for an antecedent debt, and requires such claims to be brought
“within one year after the transfer was made . . . .” General Statutes § 52-
552j (3). In her special defense directed to count three of the operative
complaint, Magallanes asserted that count three was time barred under both
the four year limitations period of § 52-552j (2) and the one year limitations
period of § 52-552j (3). Additionally, in moving for summary judgment, the
defendants contended that both § 52-552j (2) and (3) applied to count three.
In rendering summary judgment in the defendants’ favor, the court did not
reference the one year limitations period of § 52-552j (3), and none of the
parties addresses on appeal the applicability of § 52-552j (3) to count three.
Thus, with respect to count three, our analysis is limited to the limitations
period set forth in § 52-552j (2).

meet this burden, it [is] not sufficient for the [plaintiff] to prove merely that it [is] more likely than not that the defendants had concealed the cause of action. Instead, the [plaintiff] [must] prove fraudulent concealment by the more exacting standard of clear, precise, and unequivocal evidence." (Internal quotation marks omitted.) *Tunick* v. *Tunick*, 201 Conn. App. 512, 553, 242 A.3d 1011 (2020), cert. denied, 336 Conn. 910, 244 A.3d 561 (2021).

I

The plaintiff first claims that the trial court improperly determined that the defendants satisfied their initial burden of demonstrating no genuine issues of material fact that the present action was commenced against the defendants outside of the applicable limitations periods of § 52-552j, whereupon the court shifted the burden to the plaintiff to prove the existence of genuine issues of material fact concerning the timeliness of its fraudulent transfer claims. As to counts two through five of the operative complaint, the plaintiff contends that the defendants failed to establish the lack of any genuine issues of material fact that its claims were brought outside of the four year limitations period of § 52-552j (1) or (2), as applicable. With respect to counts two, four, and five only, the plaintiff further asserts that the defendants failed to establish any genuine issues of material fact that its claims were brought outside of the separate one year limitations period of § 52-552j (1). We are not persuaded.

A

With regard to the four year limitations period, the plaintiff maintains that the defendants did not establish the lack of any genuine issues of material fact as to when the purported fraudulent transfers occurred, and

identified several possible transfer dates and the corresponding dates on which the governing limitations period expired. We disagree.

As the court explained in its decision, the defendants denied the existence of any fraudulent transfers and relied on the allegations of the operative complaint to assert their statute of limitations defenses. In the operative complaint, the plaintiff alleged that unspecified assets belonging to iSell were fraudulently transferred on unidentified dates. The plaintiff alleged in support of counts two and three that the purported transfers at issue were "contemporaneous with iSell's [October 26, 2015] bankruptcy filing," whereas it alleged in support of counts four and five that the purported transfers at issue had occurred while Magallanes or Cordulack were "engaged in arbitration and litigation in the [District Court] and prior to the iSell bankruptcy filing . . . ." In other words, the plaintiff's allegations expressly related to fraudulent transfers that occurred before or contemporaneously with iSell's bankruptcy filing on October 26, 2015. Accordingly, we agree with the court that the defendants demonstrated, on the basis of the allegations in the operative complaint alone, that no genuine issues of material fact existed that the purported fraudulent transfers occurred more than four years prior to the commencement of the present action against the defendants in 2020.

Moreover, we are not convinced by the plaintiff's contention that the defendants' reliance in their summary judgment submissions on various possible terminal dates for the applicable limitations period created genuine issues of material fact. It is apparent that the defendants' dependence on multiple dates was a function of the indeterminate nature of the plaintiff's allegations regarding the details and the timing of the claimed

fraudulent transfers.[24] As we have concluded, however, relying on the plaintiff's own allegations, the defendants ultimately demonstrated that no genuine issues of material facts existed that the alleged fraudulent transfers occurred more than four years before the plaintiff had filed the present action against the defendants.

In sum, insofar as the four year limitations period of § 52-552j (1) or (2) applied to the plaintiff's fraudulent transfer claims, we conclude that the court properly determined that the defendants satisfied their initial burden to prove that no genuine issues of material fact existed and that the plaintiff's claims were time barred pursuant to these provisions.

## B

With regard to counts two, four, and five only, the plaintiff also contends that the defendants failed to

[24] The plaintiff further contends that (1) the defendants, in moving for summary judgment, identified dates in April, 2020, as potential terminal dates for the applicable limitations periods, and (2) pursuant to the executive order, any limitations periods that were scheduled to expire in April, 2020, were suspended until March 1, 2021, after the commencement of the present action against the defendants, such that the defendants' failure to demonstrate no genuine issues of material fact as to the dates of the fraudulent transfers was fatal to their motion for summary judgment. In their supplemental brief filed in response to the court's December 1, 2022 briefing order, the defendants clarified that they were no longer asserting that any limitations period was scheduled to expire in April, 2020, such that the executive order was not germane to their motion for summary judgment. Indeed, in the December 1, 2022 briefing order, the court invited the parties to present "modified argument[s] as to alternate dates (dates unaffected by the executive order) [if] required based on the acknowledged inapplicability of the April [2020] dates . . . ." For these reasons, the plaintiff's contention is unavailing.

The plaintiff also claims that, even if the defendants satisfied their initial burden of proof, the court improperly failed to determine whether any dates in April, 2020, were "dispositive" for purposes of the defendants' statute of limitations defenses, which determination was necessary in order to resolve whether the executive order applied. When the court's decision is reasonably construed in its entirety, however, it is clear that the court determined there to be no genuine issues of material fact that no limitations period was scheduled to expire in April, 2020, such that the executive order did not apply.

demonstrate the absence of genuine issues of material fact that the plaintiff's claims were asserted outside of the one year limitations period of § 52-552j (1). We disagree.

In moving for summary judgment, the defendants contended that the notice,[25] issued on October 29, 2015, informed the plaintiff of iSell's bankruptcy proceedings, such that the plaintiff did or reasonably could have discovered any purported fraudulent transfers as a result of its receipt of the notice. Accordingly, the defendants maintained that the plaintiff's claims in counts two, four, and five of the operative complaint were not timely under the one year limitations period of § 52-552j (1).

We conclude that the notice constituted sufficient evidence to sustain the defendants' initial burden to demonstrate no genuine issues of material fact vis-à-vis the one year limitations period of § 52-552j (1). The notice, which the plaintiff admits to having received,[26] unequivocally alerted the plaintiff that iSell had filed the bankruptcy petition, which listed the plaintiff as a creditor and iSell's assets at the time as comprising $50 in a bank account. Pursuant to the notice, the plaintiff reasonably could have discovered any purported fraudulent transfers made by iSell, particularly given the proximity of the bankruptcy filing to the District Court's judgment rendered against iSell less than one month prior. The plaintiff commenced the present action

___

[25] The defendants submitted a copy of the notice in support of their motion for summary judgment.

[26] Although the plaintiff concedes that it received the notice, the record is silent as to the date of receipt. Nevertheless, as the defendants argued in their summary judgment submissions and maintain on appeal, under the Federal Rules of Bankruptcy Procedure, "[s]ervice by mail of process, any other document, or notice is complete upon mailing." Fed. R. Bankr. P. 9006 (e).

against the defendants in 2020, more than one year after the notice was issued.[27] Thus, the plaintiff's claim fails.[28]

In sum, we conclude that the court properly determined that the defendants satisfied their initial burden of establishing that there were no genuine issues of material fact as to the applicable limitations provisions of § 52-552j and that the plaintiff's fraudulent transfer claims were untimely under these provisions. We further conclude that, upon determining that the defendants had met their initial burden, the court correctly shifted the burden to the plaintiff to establish the existence of genuine issues of material fact as to whether its claims were time barred under § 52-552j.

II

The plaintiff next claims that the trial court, after shifting the burden to it, improperly concluded that it failed to establish genuine issues of material fact as to whether its fraudulent transfer claims were timely pursuant to § 52-552j. The plaintiff maintains that its

[27] In the alternative, the bankruptcy trustee's report of no distribution filed on January 31, 2016, notice of which the plaintiff acknowledges having received and evidence of which was submitted by the defendants in support of their motion for summary judgment, also would have served to alert the plaintiff of any purported fraudulent transfers by iSell. The plaintiff initiated the present action against the defendants more than one year after the report of no distribution was filed and, thus, outside of the one year limitations period of § 52-552j (1).

[28] The plaintiff further maintains that the court overlooked the one year limitations period of § 52-552j (1) in granting the defendants' motion for summary judgment. The court did not address expressly whether the defendants met their burden as to this provision; however, the court acknowledged that the notice was issued following iSell's bankruptcy filing. Assuming arguendo that the court did not adequately consider this issue, we decide it on the merits because the defendants properly raised it in their summary judgment submissions and our review on appeal is plenary. See *Wilmington Trust, National Assn.* v. *N'Guessan*, 214 Conn. App. 229, 234, 279 A.3d 310 (2022) (concluding, as matter of law, that defendant could not prevail on merits of claims of res judicata and collateral estoppel raised in objection to motion for summary judgment that trial court did not address).

evidentiary submissions demonstrated that the bankruptcy petition did not accurately reflect iSell's assets, and, therefore, there were genuine issues of material fact as to (1) when the plaintiff discovered or reasonably could have discovered the purported fraudulent transfers for purposes of the one year limitations period of § 52-552j, as applicable to counts two, four, and five of the operative complaint, and (2) whether the defendants fraudulently concealed causes of action for purposes of the tolling provisions of § 52-595, as applicable to count three.[29] Specifically, the plaintiff identifies (1) the Citibank account, (2) the used furniture, and (3) the services agreement as assets that the defendants omitted from the bankruptcy petition and fraudulently concealed.[30] Additionally, the plaintiff relies on Magallanes' formation of CIMA to argue further that genuine issues of material fact existed. We are not persuaded.

Preliminarily, we set forth the following additional relevant legal principles. Practice Book § 17-45 (a) provides: "A motion for summary judgment shall be supported by appropriate documents, including but not

---

[29] The plaintiff does not claim on appeal that its evidentiary submissions created genuine issues of material fact as to whether any purported fraudulent transfers occurred within the four years preceding the commencement of the present action against the defendants. See General Statutes § 52-552j (1) and (2).

[30] In their reply brief to the plaintiff's memorandum of law in opposition to their motion for summary judgment, the defendants argued that the plaintiff's fraudulent concealment claim pursuant to § 52-595 was not properly before the court because the plaintiff had failed to specially plead it. See *Mountaindale Condominium Assn., Inc.* v. *Zappone*, 59 Conn. App. 311, 319 n.11, 757 A.2d 608 ("[i]n order to raise a claim of fraudulent concealment, the party challenging a statute of limitations defense must affirmatively plead it" (internal quotation marks omitted)), cert. denied, 254 Conn. 947, 762 A.2d 903 (2000). The court did not address this argument in its decision. The defendants on appeal did not present this issue as an alternative ground for affirmance; see Practice Book § 63-4 (a) (1); and, although they cursorily raise this issue in their appellate brief, it is not adequately briefed. See *Worth* v. *Picard*, 218 Conn. App. 549, 551 n.3, 292 A.3d 754 (2023) ("[i]t is well settled that our appellate courts are not obligated to consider issues that are not adequately briefed" (internal quotation marks omitted)). Accordingly, we deem this issue to be abandoned.

limited to affidavits, certified transcripts of testimony under oath, disclosures, written admissions and other supporting documents.'' Practice Book § 17-46 provides in relevant part: "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. . . .'' "Section 17-46 sets forth three requirements necessary to permit the consideration of material contained in affidavits submitted in a summary judgment proceeding. The material must: (1) be based on personal knowledge; (2) constitute facts that would be admissible at trial; and (3) affirmatively show that the affiant is competent to testify to the matters stated in the affidavit. . . . Affidavits that fail to meet the criteria of . . . § 17-46 are defective and may not be considered to support the judgment. Defects in affidavits include such things as assertions of facts or conclusory statements." (Citation omitted; internal quotation marks omitted.) *Atlantic St. Heritage Associates, LLC* v. *Atlantic Realty Co.*, 216 Conn. App. 530, 550, 285 A.3d 1128 (2022). "Personal knowledge" is defined to mean "[k]nowledge gained through firsthand observation or experience, as distinguished from a belief based on what someone else has said." Black's Law Dictionary (12th Ed. 2024) p. 1041. Averments qualified by the clause "upon information and belief" are not predicated upon personal knowledge. See, e.g., *Walker* v. *Housing Authority*, 148 Conn. App. 591, 599–600, 85 A.3d 1230 (2014) (averment preceded by phrase to "the best of my information and belief" reflected lack of personal knowledge). We construe these legal principles to apply with equal force to Perezgrovas' unsworn declaration.

## A

We first consider the Citibank account. In her affidavit, Magallanes averred that she received notice from

Citibank, which she identified as "iSell's bank," that the plaintiff had served Citibank with a subpoena seeking bank statements and other documents regarding IFG and iSell. Appended to the affidavit was a copy of a letter received by Citibank, dated June 3, 2019, with the subpoena enclosed. In his unsworn declaration, citing Magallanes' affidavit, Perezgrovas stated that "iSell apparently . . . had a bank account at Citibank . . . yet no bank account at Citibank was disclosed or listed in [the] bankruptcy petition." (Citations omitted.) The court concluded that, to the extent that such an account existed, the plaintiff failed to submit evidence of an account balance or the transfer of any funds from any such account to the defendants, and, therefore, the evidence concerning the Citibank account did not create any genuine issues of material fact.

We agree with the court's reasoning, which the plaintiff fails to address substantively in its appellate briefs. Although there were evidentiary submissions in the record reflecting that the Citibank account existed, the plaintiff failed to submit any other evidence regarding the account, including evidence of a transfer of funds from the account. Without competent evidence of any such transfer, the plaintiff could not demonstrate that it later discovered a purported fraudulent transfer involving the Citibank account for purposes of the one year limitations period of § 52-552j (1) or the tolling provisions of § 52-595. Accordingly, we conclude that the evidence regarding the Citibank account did not assist the plaintiff in sustaining its burden to establish a genuine issue of material fact as to the defendants' statute of limitations defenses.

B

We next address the used furniture. In an interrogatory response propounded by Magallanes on May 27, 2021, Magallanes stated that "CIMA had no assets at

the time of its inception on October 30, 2015. CIMA took over the used furniture abandoned by IFG and then iSell, which the iSell bankruptcy trustee also abandoned. The fair market value of those furnishings was less than $200." In his unsworn declaration, Perezgrovas stated that, "[i]n [the] bankruptcy petition, iSell represented that it had no office equipment, furnishings, or supplies," which contradicted Magallanes' interrogatory response. The court concluded that the used furniture was not a "material" asset, such that the plaintiff could not rely on it to create a genuine issue of material fact.

The plaintiff contests the court's determination that the assets it identified as having been fraudulently transferred, including the used furniture, had to be "material" in order to establish a genuine issue of material fact. Assuming arguendo that the court's "materiality" analysis as to the used furniture was legally incorrect,[31] we conclude that the plaintiff's claim fails, as a matter of law, on a separate ground that, although not addressed by the court, necessarily arises because the focus of our examination is on whether the plaintiff sustained its burden to demonstrate a genuine issue of material fact as to the one year limitations period of § 52-552j (1), as well as the tolling provisions of § 52-595. See *Edgewood Properties, LLC* v. *Dynamic Multimedia, LLC*, 226 Conn. App. 583, 596–97, 319 A.3d 123 ("[w]e may affirm the judgment of the court if it reached the right result, even if it did so for the wrong reason"

---

[31] The court also applied this "materiality" analysis in rejecting the plaintiff's reliance on the other assets that it identified as having been fraudulently transferred. The plaintiff challenges the propriety of the court's analysis globally. We need not address the validity of the court's "materiality" analysis because (1) as to the used furniture, we assume, without deciding, that the court's analysis was improper, and (2) as to the other assets, addressed in parts II A and C of this opinion, we dispose of the plaintiff's claims on grounds that are not dependent on the court's materiality analysis.

(internal quotation marks omitted)), cert. denied, 350 Conn. 905, 323 A.3d 344 (2024).

On the basis of Perezgrovas' unsworn declaration and Magallanes' interrogatory response, the plaintiff first discovered or reasonably could have discovered the purported fraudulent transfer of the used furniture on May 27, 2021, the date of Magallanes' interrogatory response. Pursuant to the one year limitations period of § 52-552j (1), a claimant must assert a fraudulent transfer cause of action "within one year after the transfer . . . was or could reasonably have been discovered by the claimant . . . ." General Statutes § 52-552j (1). Applying the plain and unambiguous language of this provision; see General Statutes § 1-2z ("The meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered."); to comply with the one year limitations period of § 52-552j (1), the plaintiff was required to bring a fraudulent transfer claim predicated on the used furniture within one year *after* May 27, 2021. The plaintiff commenced the present action against the defendants and filed its operative complaint in 2020, *before* the one year limitations period of § 52-552j (1) began to run.

The same reasoning applies to § 52-595, which provides that a fraudulently concealed cause of action "shall be deemed to accrue . . . at the time when the person entitled to sue thereon first discovers its existence." General Statutes § 52-595. Applying the plain and unambiguous language of the statute; see General Statutes § 1-2z; a cause of action for a fraudulent transfer on the basis of the used furniture accrued on May 27, 2021. The plaintiff initiated the present action

against the defendants and filed its operative complaint in 2020, *before* any such fraudulent transfer claim had accrued.

In sum, whether applying the one year limitations period of § 52-552j (1) or the tolling provisions of § 52-595, no fraudulent transfer claim premised on the used furniture could have been brought properly prior to May 27, 2021. The plaintiff commenced the present action against the defendants and filed its operative complaint in 2020; ergo, any fraudulent transfer claim predicated on the used furniture fell outside of the applicable limitations periods. Indeed, it would strain logic to conclude that, for statute of limitations purposes, the plaintiff raised a timely fraudulent transfer claim on the basis of its discovery of an asset *after* it had asserted its cause of action.[32] Accordingly, we conclude that the plaintiff did not demonstrate the existence of any genuine issues of material fact vis-à-vis the defendants' statute of limitations defenses on the basis of the used furniture.

C

We next consider the services agreement. According to Magallanes' affidavit, the services agreement was conveyed from IFG to iSell on August 15, 2014. Per Perezgrovas' unsworn declaration, "[u]pon information and belief, at some point in time the services agreement . . . was ultimately transferred to CIMA, which the plaintiff only learned about in May of 2022 when the defendants voluntarily disclosed that fact in the course of this litigation." The court concluded that Perezgrovas' unsworn declaration did not constitute competent evidence of a transfer of the services agreement to

---

[32] To pursue a fraudulent transfer claim predicated on the used furniture, the plaintiff, following its discovery of the used furniture, had to timely (1) file an amended complaint in the present action or (2) commence a new action. The plaintiff did neither.

CIMA, such that no genuine issues of material fact arose on the basis of the services agreement. As the court explained: "[T]here is the competency-disqualifying 'upon information and belief' [clause]. Further, there is no indication of the source of that purported information—how it came to be known by [Perezgrovas]—and no identified source for the claimed recent disclosure. . . . Magallanes' affidavit contains no such information, and the interrogatory responses in the record also do not seem to contain relevant information; did some unidentified person tell [Perezgrovas] that there had been an unidentified form of 'disclosure'?"

The plaintiff maintains on appeal that (1) the bankruptcy petition did not disclose the services agreement or its purported transfer to CIMA and (2) the plaintiff did not discover the purported transfer of the services agreement to CIMA until 2022. Additionally, the plaintiff generally challenges the court's determination that Perezgrovas' unsworn declaration was not competent evidence.

We agree with the court that, insofar as it discussed the services agreement, Perezgrovas' unsworn declaration did not constitute competent evidence of any fraudulent transfer. With respect to the services agreement, Perezgrovas' statements were qualified by the phrase, "[u]pon information and belief," which, as the court repeatedly iterated in its decision, effectively negated any personal knowledge. Without competent evidence of a fraudulent transfer of the services agreement to CIMA, the plaintiff could not meet its burden to demonstrate a later discovery of any such transfer in accordance with the one year limitations period of § 52-552j (1) or the tolling provisions of § 52-595. Accordingly, we conclude that the plaintiff failed to establish any genuine issues of material fact as to the defendants'

statute of limitations defenses predicated on its evidentiary submissions regarding the services agreement.[33]

D

Finally, the plaintiff relies on Perezgrovas' unsworn declaration to argue that it was unaware of any purported fraudulent transfers or concealment of assets until 2020, when a private investigator hired by its attorneys discovered that Magallanes had formed CIMA. Perezgrovas stated in relevant part: "It was [the private investigator's] investigation that revealed to [the plaintiff] in 2020 that Magallanes had formed now a second successor entity, CIMA, to continue the business of IFG and iSell. It was at this time [that the plaintiff] learned that CIMA was conducting much of the same business as iSell and IFG as a food broker, was owned by Magallanes, maintained the same business address as iSell and IFG, and maintained many of the same business relationships iSell and IFG once had. [The plaintiff] filed suit within months after discovering this information." Perezgrovas further stated: "Upon information and belief CIMA performs the same business as iSell and is a successor in interest to iSell that was formed for the purpose of continuing in business while avoiding the [District Court] judgment." The court rejected the plaintiff's reliance on Perezgrovas' unsworn declaration insofar as it addressed CIMA's formation and business operations, stating in relevant part that (1) Perezgrovas

_____

[33] Additionally, the plaintiff's claim fails pursuant to the rationale applicable to the used furniture set forth in part II B of this opinion. In his unsworn declaration, Perezgrovas stated that the plaintiff did not discover the purported fraudulent transfer of the services agreement to CIMA until May, 2022. Accordingly, pursuant either to the one year limitations period of § 52-552j (1) or the tolling provisions of § 52-595, a fraudulent transfer claim predicated on the services agreement could not be properly brought before the putative date of discovery in May, 2022, setting aside the lack of a specific date in the record. The plaintiff commenced the present action against the defendants and filed its operative complaint in 2020, well before its purported discovery of the services agreement in May, 2022.

did not set forth a foundation for his knowledge concerning the nature and the operation of CIMA's business, and, in any event, (2) there was no apparent transfer of assets implicated by CIMA's formation.

The plaintiff contends that "it is reasonable to conclude that iSell intentionally only listed one asset [in the bankruptcy petition] in order to conceal the transfer of assets and [the] continuation of business under newly formed CIMA." As noted in part II C of this opinion, the plaintiff also generally challenges the court's determination that Perezgrovas' unsworn declaration was not competent evidence.

We agree with the court's analysis. First, beyond identifying himself as the plaintiff's export director, Perezgrovas did not adequately detail how he was capable of discussing CIMA's business operations. Indeed, Perezgrovas stated that his knowledge about CIMA was predicated "[u]pon information and belief," ostensibly including information gleaned from the private investigator. This was insufficient to establish the personal knowledge necessary for his unsworn declaration to be deemed competent evidence in this regard.

Second, at best, Perezgrovas' statements in his unsworn declaration concerning CIMA relied on speculation and conjecture to indicate the existence of fraudulent transfers, such that they did not aid the plaintiff in sustaining its burden.[34] See *Forestier* v. *Bridgeport*, 223 Conn. App. 298, 332, 308 A.3d 102 (2024) ("Although the court must view the inferences to be drawn from

---

[34] In her affidavit, Magallanes averred that "CIMA is a food broker, representing emerging food brands into the Hispanic market and also offer[ing] business consulting and trade marketing agency to Hispanic food brand companies. . . . I have built this business based on my strong relationships with the Hispanic food brand companies. Without me personally, there is no business for CIMA." These averments do not advance the plaintiff's proposition that CIMA's formation and business operations evidenced fraudulent transfers.

the facts in the light most favorable to the party opposing the motion . . . a party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment. . . . A party opposing a motion for summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue." (Internal quotation marks omitted.)). For these reasons, we conclude that the plaintiff did not prove the existence of genuine issues of material fact vis-à-vis the defendants' statute of limitations defenses predicated on its evidentiary submission regarding CIMA's formation and business operations.

In sum, we conclude that the court (1) properly determined that the defendants satisfied their initial burden to demonstrate no genuine issues of material fact that the plaintiff's fraudulent transfer claims were brought outside of the applicable limitations periods of § 52-552j and, therefore, as a matter of law, time barred, and (2) after shifting the burden of proof to the plaintiff, properly determined that the plaintiff failed to establish any genuine issues of material fact avoiding the application of § 52-552j. Accordingly, we further conclude that the court properly granted the defendants' motion for summary judgment as to counts two through five of the operative complaint.

The judgment is affirmed.

In this opinion the other judges concurred.